Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| ARMANDO NEVAREZ ROSA Y OTROS<br><br>Apelante<br><br>v.<br><br>TETSURO MUROI MIYAZAWA Y OTROS<br><br>Apelado | KLAN202500473 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2022CV03173<br><br>Sobre: Acción Civil, Incumplimiento de Contrato, Daños y Perjuicios, Dolo y Engaño |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 27 de junio de 2025.

Comparecen Armando Nevárez Rosa, su esposa Innette Alicea Marcano y la sociedad legal de gananciales compuesta por ambos (en conjunto, parte apelante) mediante un recurso de *Apelación*, para solicitarnos la revisión de la *Sentencia* emitida y notificada el 10 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.[1] Mediante este dictamen, se declaró *Ha Lugar* una solicitud de sentencia sumaria incoada por Tetsuro Muroi (en adelante, apelado), por lo que desestimó la demanda. Sobre dicho dictamen, el apelado del título interpuso una solicitud de enmienda a la sentencia,[2] mientras que la parte apelante presentó una reconsideración.[3] En respuesta a la solicitud del apelado, el 21 de mayo de 2025, el foro *a quo* emitió una *Sentencia enmendada*, la

---

[1] Apéndice 1 del recurso, a las págs. 1-16.
[2] Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la Entrada 114.
[3] Apéndice 2 del recurso, a las págs. 17-33.

Número Identificador
SEN2025_____

cual notificó al día siguiente.[4] En el dictamen enmendado, el foro apelado modificó algunos aspectos de la parte dispositiva.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* enmendada apelada.

I

La *Demanda* de autos fue presentada por la parte apelante, el 21 de junio de 2022, contra del apelado, por sí y en representación de la sociedad legal de gananciales compuesta él con Jane Doe, y de otras partes desconocidas.[5] La misma, versaba sobre una acción por incumplimiento de contrato, daños y perjuicios, dolo y engaño.

En el pliego, la parte apelante alegó que llevaba ocho (8) años sin poder obtener el título de una propiedad sita en el municipio de Dorado. Razonó que dicha situación era producto de la culpa, negligencia, incumplimiento de contrato y omisión por parte del apelado. Arguyó que las partes habían pactado el precio de opción y compraventa de la referida propiedad en la suma de $275,000.00 dólares. Indicó que, como parte del convenio, se obligó a pagar las contribuciones sobre la propiedad inmueble (CRIM) y las cuotas de mantenimiento de la urbanización donde radicaba la propiedad, y que estaba cumpliendo con ello. Reconoció que, aunque habían pagado cierta suma de dinero, quedaba un balance al descubierto. Empero, adujo que el apelado había incumplido con su parte del contrato, específicamente, con cancelar los gravámenes existentes de la propiedad, y que se había negado a otorgar la escritura de compraventa. Acotó que, lo anterior, le impedía pagar el balance adeudado.

A tenor, la parte apelante sostuvo, en su escrito de demanda, que tenían una acción en daños y perjuicios e incumplimiento de contrato. Por lo anterior, solicitó al foro de instancia a que ordenara

---

[4] Apéndice 8 del recurso, a las págs. 56-72.
[5] Apéndice 11 del recurso, a las págs. 80-94.

al apelado a concederle la propiedad y a deducirle, de los gastos de cierre, cancelación y de corredor de bienes raíces, lo adeudado.

En respuesta, el 11 de octubre de 2022, el apelado presentó su *Contestación a Demanda y Reconvención*.[6] De lo que se desprende, negó tener compuesta una sociedad legal de gananciales con Jane Doe, así como otras tantas alegaciones, mientras que, admitió otras. Además, presentó sus defensas afirmativas,[7] e incluyó una *Reconvención*.[8]

En la reconvención, en apretada síntesis, adujo que, entre las partes, se suscribió un contrato de alquiler con opción a compra y que la parte apelante no ejerció la opción de compraventa de la propiedad de acuerdo con el contrato. Alego que, en dicho contrato, el cual era por doce (12) meses, la parte apelante se obligó a pagar un canon de arrendamiento por la suma de $1,400.00 dólares mensuales y a pagar otros gastos relacionados a la propiedad. Detalló que las partes, posteriormente, acordaron extender el contrato y, en virtud de ello, la parte apelante se obligó a continuar pagando los cánones de arrendamiento por la suma de $1,400.00 dólares, así como el pago del mantenimiento de la urbanización, reparación de electrodomésticos y el pago de las contribuciones sobre la propiedad (CRIM). Igualmente, mediante la referida extensión, ajustaron el precio de la propiedad a la suma de $275,000.00 dólares y se acordó que la parte apelante debía efectuar pagos cada tres (3) meses por la suma de $25,000.00 dólares, los cuales se acreditarían al precio de la compraventa. Establecido lo anterior, el apelado alegó que, la parte apelante incumplió con lo pactado, puesto a que efectuó pagos por concepto de renta hasta febrero de 2016, por lo que le adeudaba la misma, más los intereses,

---

[6] Apéndice 12 del recurso, a las págs. 95-109.
[7] *Íd.*, a las págs. 98-101.
[8] *Íd.*, a las págs. 101-109.

recargos y penalidades. Esbozó que la parte apelante también incumplió con los pagos de $25,000.00 dólares, puesto a que, a diciembre de 2017, entre otros incumplimientos, solo había abonado $100,000.00 dólares. Arguyó que, aun así, el apelado le brindó otra oportunidad, por lo que nuevamente enmendaron el contrato, el cual alegó que la parte apelante también incumplió. Dado a lo anterior, solicitó que se expidiera una orden de desahucio en contra de la referida parte.

Además, el apelado peticionó que se declarara no ha lugar la demanda y ha lugar su reconvención. Solicitó, igualmente, que: (i) se determinara que la parte apelante incumplió las obligaciones del contrato; (ii) se le condenara a pagar la una suma no menor de $600,000.00 dólares por daños contractuales y extracontractuales; (iii) resolviera el contrato entre las partes; (iv) ordenara el desahucio de la parte apelante, e (v) impusiera el pago de costas, gastos, intereses y honorarios de abogado.

De ahí, el 8 de noviembre de 2022, la parte apelante presentó una *Réplica a contestación a demanda y reconvención.*[9] En lo relativo a la réplica, admitió algunos párrafos, negó muchos otros. En cuanto a la reconvención, negó las alegaciones en su contra y solicitó que se declarara sin lugar.

Según se desprende del expediente judicial ante el foro de instancia, luego de la presentación de estos escritos, se inició el descubrimiento de prueba.

Acaecidos varios trámites procesales innecesarios pormenorizar, el 4 de marzo de 2024, el apelado instó una *Solicitud de Sentencia Sumaria.*[10] Expuso que, en el presente caso, no existían

---

[9] Apéndice 13 del recurso, a las págs. 110-116.
[10] Apéndice 14 del recurso, a las págs. 117-130. Véase el SUMAC, a la Entrada 95, el cual contiene nueve (9) anejos relacionados a la solicitud de sentencia sumaria, los cuales no fueron unidos al apéndice del recurso del título. Los referidos anejos contienen los documentos siguientes: **Anejo 1**: Primer Requerimiento de Admisiones, Pliego de Interrogatorios, y Requerimiento de Producción De Documentos, con fecha del 5 de abril de 2023; **Anejo 2**:

controversias de hecho, y que, conforme al derecho aplicable, debía dictarse sentencia sumaria a su favor respecto a todas sus reclamaciones. Adujo que, en el caso de marras, se firmó un contrato de opción a compra y que la parte apelante incumplió con el mismo, por lo que procedía la resolución del referido contrato, el desahucio de la propiedad en cuestión, así como el pago de los cánones de arrendamiento adeudados, por haber habitado la propiedad en cuestión sin pagar canon alguno. En apoyo a lo anterior, presentó al foro de instancia una lista de diecinueve (19) hechos que estimó incontrovertidos. A tenor, peticionó que se dictara sentencia sumaria mediante la cual se declarara no ha lugar la demanda incoada por la parte apelante y ha lugar su reconvención.

En reacción, el 15 de marzo de 2024, la parte apelante presentó su *Contestación a solicitud de sentencia sumaria y oposición a solicitud de sentencia sumaria.*[11] En apretada síntesis,

---

Contestaciones al Primer Requerimiento de Admisiones, Pliego de Interrogatorios, y Requerimiento de Producción de Documentos, con fecha del 13 de junio de 2023; **Anejo 3**: Documento Intitulado 'Lease Agreement with Option to Buy', con fecha del 12 de octubre de 2014, y firmado por Armando Nevárez; **Anejo 4**: Documento intitulado 'Addendum to Lease Agreement Purchase Contract', firmado, el 8 de noviembre de 2015, por una de las partes compradoras; **Anejo 5**: Recibos de Pagos y Estado de Cuenta del CRIM; **Anejo 6**: Demanda sobre desahucio sumario presentada en el Caso Civil Núm. TB2019CV00682, con fecha del 21 de octubre de 2019,; **Anejo 7**: Contestación Demanda de desahucio sumario y Reconvención incoada en el Caso Civil Núm. TB2019CV00682, con fecha del 4 de agosto de 2020,; **Anejo 8**: Orden del Tribunal de Instancia del 20 de agosto de 2020, en el Caso Civil Núm. TB2019CV00682, mediante la cual se declaró Ha Lugar una moción de desistimiento; **Anejo 9**: Sentencia del Caso Civil Núm. TB2019CV00682, en la cual se tuvo por desistida a la parte demandante.
[11] Apéndice 15 del recurso, a las págs. 131-149; Apéndice 9 del recurso, a las págs. 73-75; Apéndice 10 del recurso, a las págs. 76-79; y Apéndice 16 del recurso, a las págs. 150-151. Véase, además, el SUMAC, a la Entrada 105. Para sustentar su oposición a la solicitud de la sentencia sumaria la parte apelante acompaño su escrito con los documentos siguiente: **Anejo 1**: Estudio de Título de la propiedad objeto de este caso, con fecha del 6 de marzo de 2024; **Anejo 2**: Documento Intitulado 'Lease Agreement with Option to Buy', anejado al petitorio sumario, **Anejo 3**: Documento intitulado 'Addendum to Lease Agreement Purchase Contract', anejado al petitorio sumario; **Anejo 4:** Deposición tomada al apelado el 11 de septiembre de 2023; **Anejo 5:** Correos electrónicos intercambiados entre las partes del título; **Anejo 6**: Factura del licenciado Jean Marcel Menay Vega, con fecha del 4 de septiembre de 2018; **Anejo 7**: Demanda presentada en el Caso Civil Núm. TB2019CV00682, anejada al petitorio sumario; **Anejo 8** : Contestación a Demanda y Reconvención incoada en el Caso Civil Núm. TB2019CV00682, anejada al petitorio sumario; **Anejo 9**: Minuta del Caso Civil Núm. TB2019CV00682 de una vista celebrada el 4 de noviembre de 2019; **Anejo 10**: Sentencia del Caso Civil Núm. TB2019CV00682, anejada al petitorio sumario. Además de los anejos antes mencionados, la parte apelante incluyó un juramento haciendo constar que todo lo alegado en su oposición a la sentencia sumaria era cierto y le constaba de su propio y personal conocimiento.

alegó que de la solicitud instada se desprendía que existían dudas sobre hechos esenciales. Alegó que la transacción no se realizó porque el apelado no eliminó los gravámenes sobre el inmueble antes de que se otorgara la escritura y, según su entender, hasta que esta gestión no se realizara, no podía perfeccionarse el contrato de compraventa. A tenor, solicitó que el tribunal de instancia denegara la solicitud de sentencia sumaria.

Luego de presentarse los antedichos escritos, se presentaron escritos adicionales, pero el tribunal de instancia no lo autorizó, así que, el asunto quedó sometido.

De ahí, el 10 de abril de 2025, el tribunal *a quo* emitió y notificó su *Sentencia.*[12] Mediante esta *Sentencia*, declaró *Ha Lugar* la solicitud de sentencia sumaria incoada por el apelado, por lo que desestimó la demanda. En consecuencia: (i) resolvió el contrato a favor del apelado y ordenó el desahucio contra la parte apelante; (ii) ordenó a la parte apelante a satisfacer los cánones de arrendamiento adeudados **desde diciembre de 2017**, hasta la fecha en que se desalojara el inmueble, a razón de $1,400.00 dólares mensuales, más las penalidades y recargos que su incumplimiento hubiese generado; (iii) dispuso que la parte apelante adeudaba al apelado la suma de **$23,987.03 dólares de CRIM**; (iv) dictaminó que al haberse determinado la resolución del contrato, el apelado devolvería a la parte apelante las sumas que le fueron entregadas por los demandantes como parte del contrato de compraventa fallido, restándoles las sumas que la parte apelante le adeudara; y (v) dispuso que no se resolvía, por no haber prueba alguna, la determinación de cuantía sobre daños y perjuicios.

Como parte del dictamen emitido, el tribunal de primera instancia emitió las siguientes once (11) determinaciones de hechos:

---

[12] Apéndice 1 del recurso, a las págs. 1-16.

1. El 12 de octubre de 2014, el señor Nevárez y el señor Muroi suscribieron un contrato titulado "Lease Agreement with an Option to Buy" (Contrato) para el alquiler de la propiedad que ubica en la Urbanización Paseo del Mar Vía Moritz #433, Dorado PR 00646 (Propiedad).

2. Conforme al Contrato, el señor Muroi, como arrendador/vendedor (Lessor/Seller), arrendaría la Propiedad al señor Nevárez, como arrendatario/comprador (Lessee/Buyer), por el término de un año (12 de octubre de 2014 a 11 de octubre de 2015), bajo un canon de arrendamiento mensual de $1,400.00 (con un cargo de retraso de 5%), ello con la opción de comprar la Propiedad.

3. El 11 de agosto de 2015, el señor Nevárez y el señor Muroi acordaron extender el Contrato con la firma de un "Addendum to Lease Agreement -Purchase Contract" (Adendum).

4. Conforme al Adendum, las partes acordaron que el señor Muroi le vendería la Propiedad al señor Nevárez, sujeto a una serie de condiciones.

5. Conforme a la primera cláusula de los "Terms and Conditions" del Adendum, el precio de la compraventa sería de $275,000.00, a ser pagado de la siguiente manera:
   a) El señor Nevárez pagaría, cada tres meses, la suma de $25,000.00, a ser acreditada al precio de compraventa.
   b) El primer depósito se haría en agosto de 2015, y el último depósito se\haría en octubre de 2017, para un total de $250,000.00.
   c) El señor Nevárez retendría el último depósito de $25,000.00, para propósitos del cierre y del pago de la comisión de la corredora de bienes raíces.
   d) La compraventa se llevaría a cabo en o antes de diciembre de 2017.

6. Conforme a la cuarta cláusula de los "Terms and Conditions" del Adendum, el señor Nevárez, quien llevaba alquilando y ocupando la Propiedad físicamente desde octubre de 2014, accedió a todo lo siguiente:
   • La renta mensual seguiría siendo $1,400 y debía pagarse el primer día de cada mes.
   • El señor Nevárez pagaría las cuotas de mantenimiento de la Propiedad.
   • El señor Nevárez reemplazaría a su propio costo todos los enceres (appliances), aires acondicionados, gabinetes de cocina y drenajes de piscina, sin que el señor Muroi tenga obligación de reembolsarle por ello.
   • El señor Nevárez sería responsable por pagar los impuestos sobre la Propiedad cobrados por el Centro de Recaudación de Ingresos Municipales (CRIM) desde la fecha de la firma del Adendum hasta la fecha del cierre.

7. El señor Nevárez continúa residiendo en la Propiedad hoy en día.

8. Respecto a los pagos de $25,000.00, a hacerse cada tres meses, los cuales se acreditarían al precio de compraventa, hasta alcanzar el precio de compraventa pactado de $250,000.00, en octubre de 2017, el señor Nevárez, en diciembre de 2017, solo abonó $100,000.00, más adelante

abonó $65,000.00 adicionales para un total abonado de $165,000.00.

9. El Adendum no dispone que la "cancelación de gravámenes" era una "condición" (ni tampoco una "condición esencial e indispensable") para que el señor Nevárez cumpliera con su obligación bajo la primera cláusula ("FIRST") de hacer los pagos de $25,000 cada tres meses desde agosto de 2015 hasta octubre de 2017, hasta haber pagado la suma total de $250,000 para octubre de 2017.

10. El señor Nevárez incumplió con obligación, surgida en el Adendum, para el pago de las contribuciones sobre la propiedad al CRIM.

11. El señor Muroi desde el 2016 al presente, ha pagado $26,826.09, por concepto del CRIM.[13]

Como parte del dictamen emitido, el foro primario concluyó que aun cuando la parte apelante no cumplió con el contrato de opción a compra, vivía en el inmueble desde al menos diciembre de 2017, al presente, sin pagar renta o CRIM, pero, aun así, incoaron una demanda en la cual adujo ser la parte perjudicada por el alegado incumplimiento del apelado. Razonó que, lejos de ser la parte agraviada, la parte apelante aprovechó las circunstancias para vivir sin pagar renta o CRIM por espacio de ocho (8) años, por lo que procedía la desestimación.

En desacuerdo con el resultado, el 24 de abril de 2025, la parte apelante incoó una *Moción de reconsideración*.[14] Arguyó que, el presente caso, no era susceptible de ser resuelto por la vía sumaria. Argumentó que existían controversias de hechos que impedían dicho curso de acción. A tenor, solicitó que se reconsiderara el dictamen sumario emitido.

En el interín, el apelado interpuso una *Solicitud de enmienda a Sentencia a tenor con la Regla 49.1 de Procedimiento Civil*.[15] Expuso que el dictamen emitido debía ser aclarado o modificado para que la fecha desde la cual se adeudaban los cánones de arrendamiento fuese marzo de 2016, y no diciembre de 2017. De

---

[13] Apéndice 1 del recurso, a las págs. 5-7.
[14] Apéndice 2 del recurso, a las págs. 17-33.
[15] Véase el SUMAC, a la Entrada 114.

igual forma, para que se estableciera que la deuda de CRIM era $26,826.09 dólares y no $23,987.03 dólares, y que se dispusiera que también se adeudaría cualquier otra cantidad que se acumulara posteriormente.

Con relación a la solicitud de reconsideración, mediante *Orden*, notificada el 28 de abril de 2025, el foro de instancia concedió término al apelado para exponer su posición.[16] En cumplimiento, el 7 de mayo de 2025, el apelado presentó su *Oposición a "Moción de reconsideración."*[17] Peticionó que la solicitud instada por la parte apelante fuese declarada sin lugar. En relación con la aludida oposición, el tribunal de instancia refirió a la antedicha parte a su *Orden*, notificada el 28 de abril de 2025.[18]

De ahí, en atención a la solicitud de enmienda presentada por el apelado, mediante *Orden*, emitida el 5 de mayo de 2025, y notificada el día 9, del mismo mes y año, el tribunal *a quo* emitió una *Orden* en la cual dispuso: "Se emite sentencia enmendada."[19] Luego, el 13 de mayo de 2025, la parte apelante presentó su *Réplica a la oposición a moción de reconsideración.*[20]

Por otro lado, el 21 de mayo de 2025, el apelante incoó una *Moción aclaratoria respecto a entradas en SUMAC núm. 117 y 118.*[21] En su escrito, lo que básicamente expresó fue no estar claro con la *Orden* notificada por el foro de instancia el 28 de abril de 2025.

---

[16] Apéndice 3 del recurso, a la pág. 34. Véase, además, el SUMAC, a la Entrada 115.

[17] Apéndice 4 del recurso, a las págs. 35-37. Véase, además, el SUMAC, a la Entrada 116.

[18] Véase, además, el SUMAC, a la Entrada 117.

[19] Apéndice 5 del recurso, a la pág. 38. Véase, además, el SUMAC, a la Entrada 118. No surge de los autos que se hubiese adjuntado a la Entrada 118 o al expediente judicial del TPI una sentencia enmendada en la fecha en que se notificó esta Orden.

[20] Apéndice 6 del recurso, a las págs. 39-55. Véase, además, el SUMAC, a la Entrada 120.

[21] Apéndice 7 del recurso, a las págs. 54-55. Véase, además, el SUMAC, a la Entrada 121.

Así las cosas, el 21 de mayo de 2025, el foro de instancia emitió una *Sentencia enmendada*,[22] la cual notificó el 22 de mayo de 2025.[23] En la *Sentencia enmendada,* el tribunal apelado modificó su dictamen a los fines de que: (i) ordenó a la parte apelante a satisfacer los cánones de arrendamiento adeudados **desde marzo de 2016**, hasta la fecha en que se desalojara el inmueble, a razón de $1,400.00 dólares mensuales, más las penalidades y recargos que su incumplimiento hubiese generado,[24] y (ii) dispuso que la parte apelante adeudaba al apelado la suma de **$26,826.09 dólares de CRIM y cualquier otra deuda acumulada**.[25] El resto del dictamen permaneció inalterado.

Inconforme, el 27 de mayo de 2025, compareció ante nos la parte apelante mediante un *Recurso de Apelación* y esgrimió la comisión de los siguientes cinco (5) señalamientos de error:

(A) PRIMER SEÑALAMIENTO DE ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAM[Ó]N AL DICTAR SENTENCIA SUMARIA EL 10 DE ABRIL DE 20225 A FAVOR DE LA PARTE DEMANDADA-RECONVINIENTE HABIENDO UNA CONTROVERSIA DE HECHO Y DE DERECHO; HABIENDO UNOS HECHOS MATERIALES QUE AFECTA EL RESULTADO DE LA SENTENCIA SUMARIA; HABIENDO UN DERECHO SUSTANTIVO APLICABLE LA CUAL DICHA CONTROVERSIA ES REAL SOBRE UN HECHO MATERIAL LO CUAL ES SUFICIENTE PARA QUE SE RESUELVA LA CONTROVERSIA EN UN JUICIO PLENARIO (RAM[Ó]N P[É]REZ V. UNIVISI[Ó]N DE PUERTO RICO, INC[.,] 178 DPR, 214 (2010).

(B) SEGUNDO SEÑALAMIENTO DE ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAM[Ó]N AL DICTAR SENTENCIA SUMARIA HABIENDO LAS PARTES PACTADO EN UN CONTRATO (ADDENDUM) QUE LA PARTE VENDEDORA SE OBLIG[Ó] A CANCELAR TODOS LOS GRAV[Á]MENES Y EL MISMO D[Í]A OTORGAR LA COMPRAVENTA LA CUAL INCUMPLI[Ó], NUNCA NOTIFIC[Ó] A LA PARTE COMPRADORA EN NING[Ú]N MOMENTO A LOS FINES DE QUE LA PARTE DEMANDANTE-RECONVENIDA COMPARECIERA ANTE EL NOTARIO DE LA PARTE DEMANDADA RECONV[I]NIENTE A FIRMAR LA COMPRAVENTA LA CUAL SE FIRMAR[Í]A EN ESE D[Í]A LA CANCELACI[Ó]N DE LOS GRAV[Á]MENES ESE

---

[22] Apéndice 8 del recurso, a las págs. 57-72. Véase, además, el SUMAC, a la Entrada 122.

[23] Apéndice 8 del recurso, a la pág. 56. Véase, además, el SUMAC, a la Entrada 122.

[24] En la *Sentencia* original, el foro de instancia había ordenado que este pago se haría desde diciembre de 2017. Véase el Apéndice 1 del recurso, a la pág. 15.

[25] En la *Sentencia* original el tribunal de instancia dispuso que la parte apelante le adeudaba $23,987.03 de CRIM y no dispuso sobre ninguna otra deuda acumulada. Véase el Apéndice 1 del recurso, a la pág. 16.

HECHO NUNCA LA PARTE DEMANDADA PRESENT[Ó], DE EXISITR LA DEBIDA PRUEBA NOTIFICACI[Ó]N A LA PARTE DEMAND[AN]TE A COMPARECER SEGÚN EL ACUERDO SOSTENIDO ENTRE LAS PARTES MEDIANTE EL [Ú]LTIMO CONTRATO ADDENDUM. EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA ERR[Ó] AL NO CELEBRAR UN JUICIO EN SUS M[´E]RITOS NO TUVO ANTE S[Í] DICHA PRUEBA HECHO SUSTANCIAL, REAL Y EN CONTROVERSIA EN EL PRESENTE CASO.

(C) TERCER SEÑALAMIENTO DE ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAM[Ó]N AL DICTAR SENTENCIA SUMARIA NO TUVO ANTE S[Í] INFORMACI[Ó]N, DOCUMENTOS, DEPOSICIONES, PRUEBA SUSTANCIAL Y REAL LA CUAL FORMA PARTE DEL DESCUBRIMIENTO DE PRUEBA CONFORME A LAS REGLAS DE PROCEDIMIENTO CIVIL DE PUERTO RICO CUYO PROP[Ó]SITO PRINCIPAL, ENTRE OTROS, ES DESCUBRIR <u>PRUEBA PERTINENTE</u> AL ASUNTO EN CONTROVERSIA EN EL PLEITO. (ELA V. CASTA DEVELOPERS, 162 DPR 1 (2004).

(D) CUARTO SEÑALAMIENTO DE ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAM[Ó]N AL EMITIR UNA SENTENCIA SUMARIA CUANDO EXISTE CONTROVERSIA SUSTANCIAL Y REAL DE HECHO Y DE DERECHO EN EL PRESENTE CASO Y AL NO CONSIDERAR VARIAS DISPOSICIONES LEGALES DE NUESTRO C[Ó]DIGO CIVIL DE PUERTO RICO DE 2020 (LEY 55-2020, SEGÚN ENMENDADA).

(E) QUINTO SEÑALAMIENTO DE ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAM[Ó]N AL EMITIR UNA SENTENCIA ENMENDADA EL 21 DE MAYO DE 2025 (ENTRADA 122 SUMAC) A LAS 11:39 A.M. HABIENDO NOTIFICADO SENTENCIA SUMARIA ENM[EN]DADA EL 5 DE MAYO DE 2025, NOTIFICADA EL 9 DE MAYO DE 2025.

Mediante *Resolución*, emitida el 29 de mayo de 2025, concedimos a la parte apelante hasta el 5 de junio de 2025, para acreditar el cumplimiento con la Regla 13(B) y la Regla 14(B) del Reglamento de este Tribunal de Apelaciones.[26] Por otro lado, concedimos a la parte apelada hasta el 26 de junio de 2025, para presentar su alegato en oposición.

Por su parte, el 26 de junio de 2025, compareció la parte apelada mediante *Alegato en oposición a "recurso de apelación"*. Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso ante nuestra consideración.

---

[26] 4 LPRA Ap. XXII-B, R. 13(B) y R. 14(B).

II

**A. Recurso de Apelación**

La Regla 52.2 (a) de Procedimiento Civil,[27] así como la Regla 13(A) del Reglamento del Tribunal de apelaciones,[28] disponen que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días, desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello, quiere decir que no admite justa causa, es improrrogable y que su incumplimiento es insubsanable.[29] Por otra parte, es menester acentuar que la correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[30] De manera que, si la sentencia no fue notificada conforme a derecho, el Tribunal de Apelaciones no tendrá jurisdicción para atender la misma, ya que el recurso instado ante este foro será prematuro.[31]

Ahora bien, el término de treinta (30) días para acudir en alzada, antes señalado, puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[32] En tal caso, el término para apelar, se contará a partir del archivo en autos de la copia de la notificación de la resolución que resuelve la moción.[33] Esto, a pesar de que la moción se haya declarado sin lugar.

De otra parte, precisa señalar que en grado de apelación, la tarea principal del Tribunal de Apelaciones es examinar como los tribunales inferiores aplican el derecho a los hechos particulares de cada caso, y si abusaron de su discreción.[34] En consecuencia, el foro

---

[27] 32 LPRA Ap. V, R. 52.2 (a).

[28] 4 LPRA Ap. XXII-B, R. 13 (A).

[29] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).

[30] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).

[31] *Berríos Fernández v. Vázquez Botet*, 196 DPR 245, 250-251 (2016).

[32] Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47.

[33] *Íd.*

[34] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 707 (2013); *Sierra, Secretario del Trabajo v. Tribunal Superior*, 81 DPR 554, 572 (1958).

apelativo no debe pretender administrar ni manejar el trámite regular de los casos ante el foro primario.[35] Así, pues, si las determinaciones del tribunal no están desprovistas de base razonable ni perjudican los derechos de una parte, debe prevalecer el criterio del juez de instancia.[36] Por ello, se ha establecido que los foros apelativos no deben intervenir con las facultades discrecionales del tribunal de instancia, a menos que se demuestre que: (i) actuó con perjuicio o parcialidad; (ii) abusó de su discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o derecho sustantivo. Igualmente, se permite intervenir para evitar un perjuicio sustancial.[37]

### B. Sentencia Sumaria

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[38] El propósito este mecanismo procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[39] A esos efectos, "solamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[40] Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que, de los documentos que acompañan la solicitud o que obran en el expediente del tribunal, no surja controversia legítima sobre hechos materiales del caso y que, por ende, sólo reste aplicar el derecho.[41]

---

[35] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

[36] *Sierra, Secretario del Trabajo v. Tribunal Superior,* supra*,* a la pág. 572.

[37] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023).

[38] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

[39] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).

[40] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

[41] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).

Ahora bien, a los fines de considerar la moción, para que se dicte sentencia sumariamente, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones juradas ofrecidas por la parte promovente.[42] No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción.[43]

La Regla 36 de Procedimiento Civil regula todo lo concerniente a las solicitudes de sentencia sumaria. En específico, la Regla 36.2 de Procedimiento Civil dispone que:

> Una parte contra la cual se haya formulado una reclamación podrá, a partir de la fecha en que fue emplazada pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[44]

Por otra parte, a Regla 36.3 de Procedimiento Civil requiere que la parte que promueve la solicitud de sentencia sumaria, cumpla con los requisitos de forma siguientes:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción sobre la cual se solicita la sentencia sumaria;

(4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.[45]

---

[42] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993).
[43] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, a la pág. 957.
[44] 32 LPRA Ap. V, R. 36.2.
[45] *Íd.*, R. 36.3.

De otra parte, en cuanto a la contestación a la Sentencia Sumaria, la Regla 36.3 (b) de Procedimiento Civil dispone que esta deberá ser presentada dentro del término de veinte (20) días, desde su notificación, y deberá contener lo siguiente:

(1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.[46]

Cumplidos los requisitos establecidos para la solicitud de sentencia sumaria y su correspondiente oposición, el inciso (e) de la Regla 36.3 de Procedimiento Civil establece que:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[47]

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta lo presentado por la parte promovente no implica necesariamente que proceda la sentencia sumaria.[48] Sobre este particular, el Tribunal Supremo ha resuelto que las partes no

---

[46] 32 LPRA Ap. V, R. 36.3 (b).

[47] *Íd.*, R. 36.3 (e); *García Rivera et al. v. Enríquez,* supra, a la pág. 338; *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015).

[48] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* supra, a la pág. 913; *García Rivera et al. v. Enríquez,* supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.,* 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 281 (1990).

puede descansar en aseveraciones generales, es decir, meras afirmaciones no bastan.[49] A esos efectos, y a tenor con la Regla 36.5 de Procedimiento Civil,[50] estarán obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones.[51] Por tanto, como regla general, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente.[52]

Por otra parte, es menester subrayar que nuestro Tribunal Supremo ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en los cuales hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[53] De la misma manera, también ha razonado que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[54]

En cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;
>
> (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

---

[49] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).

[50] 32 LPRA Ap. V, R. 36.5

[51] *Flores v. Municipio de Caguas*, supra, a la pág. 525; *Ramos Pérez v. Univisión*, supra, a la pág. 215-216.

[52] *Ramos Pérez v. Univisión*, 178 DPR 200, 215 (2010); *Roldán Flores v. M. Cuebas*, supra, a la pág. 677.

[53] *Elías y otros v. Chenet y otros*, 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017).

[54] *Elías y otros v. Chenet y otros*, supra, a la pág. 521, citando a *García López v. Méndez García*, 88 DPR 363, 380 (1963).

(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[55]

Ahora bien, la sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (iv) como cuestión de derecho, no proceda.[56] Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. *Primero*, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden, por primera vez ante el foro apelativo, esbozar teorías nuevas o esgrimir asuntos nuevos".[57] *Segundo*, solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[58] Entiéndase, que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia.[59]

---

[55] *Roldán Flores v. M. Cuebas, et al., supra,* 679. (Cita depurada); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).
[56] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335-336 (2021).
[57] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 114. (Cita depurada).
[58] *Íd.*, a la pág. 115.
[59] *Íd.*; *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

### C. Teoría General de los Contratos e Incumplimiento Contractual

Bajo nuestro crisol doctrinario, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en [los] que intervenga cualquier género de culpa o negligencia".[60] Particularmente, las obligaciones contractuales tienen fuerza de ley entre las partes y deben cumplirse según lo pactado.[61] Ahora bien, en nuestro ordenamiento jurídico rige el principio de libertad de contratación.[62] De manera que, los contratantes tienen la facultad de establecer los pactos, condiciones y cláusulas que le sean más convenientes, siempre y cuando no sean contrarios a la leyes, a la moral y al orden público.[63]

En lo que respecta al contrato, este existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[64] En otras palabras, para que se considere que existe un contrato se requiere que concurran tres (3) requisitos: (i) consentimiento de los contratantes; (ii) un objeto cierto que sea materia del contrato, y (iii) la causa de la obligación que se establezca.[65] Una vez perfeccionado un contrato, las partes que lo suscriben están sujetas a hacer valer el cumplimiento de lo pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[66] Entiéndase, que el principio de la obligatoriedad de los contratos está estrechamente vinculado con la buena fe de los contratantes.[67] Sobre tal aspecto, nuestro Tribunal Supremo ha indicado que:

---

[60] Artículo 1042 del Código Civil de Puerto Rico, Edición de 1930 (Código Civil de 1930), 31 LPRA sec. 2992. El referido código fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

[61] Artículo 1044 del Código Civil de 1930, 31 LPRA sec. 2994 (derogado).

[62] *Oriental Financial v. Nieves*, 172 DPR 462, 470 (2007).

[63] Artículo 1207 del Código Civil de 1930, 31 LPRA sec. 3372 (derogado); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 408 (2018).

[64] Artículo 1206 del Código Civil de 1930, 31 LPRA sec. 3371 (derogado)

[65] *Íd.*, Artículo 1213, 31 LPRA sec. 3391 (derogado).

[66] Artículo 1210 del Código Civil de 1930, 31 LPRA sec. 3375 (derogado).

[67] *Unysis v. Ramallo Brothers*, 128 DPR 842, 852 (1991).

> [Se] considera como un principio que debe regir en toda sociedad civilizada la idea de que los hombres deben poder contar con que aquellos con quienes tratan en el intercambio social actuarán de buena fe y por tanto llevarán a cabo las expectativas razonables que sus promesas o su conducta hayan creado razonablemente en los demás. La obligatoriedad del contrato se funda, pues, de acuerdo con esta idea en una norma ética derivada de la buena fe, que exige no defraudar la confianza que en otro pueda haber creado nuestra promesa o nuestra conducta.[68]

Es por lo anterior que, desde el momento en que las partes perfeccionan con el mero consentimiento un contrato, cada una viene obligada no solo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[69] Por consiguiente, la validez y el cumplimiento de los contratos no puede dejarse al arbitrio de una de las partes.[70]

Como corolario de lo antes expuesto, el Código Civil de 1930, hoy derogado, dispone en su Artículo 1233 que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas".[71] Asimismo, establece que "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas".[72] En ese aspecto, cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos, no dando margen a ambigüedades u otras interpretaciones, así deben aplicarse.[73] En adición, los tribunales se deben limitar a interpretar los contratos en los casos en los que esto sea estrictamente

---

[68] *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[69] Artículo 1210 del Codigo Civil de 1930, 31 LPRA sec. 3375 (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[70] Artículo 1208 del Código Civil de 1930, 31 LPRA sec. 3373 (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852
[71] 31 LPRA sec. 3471 (derogado).
[72] *Íd.*
[73] *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.

necesario. [74] Asi, pues, si un contrato es claro, presupone concordar la letra contractual con la intención de las partes.[75]

Cónsono con lo anterior, es harto conocido que en nuestra jurisdicción impera la teoría de la subjetividad en la interpretación de los contratos, la cual implica el indagar cual fue la voluntad real de las partes con el propósito de que esta prevalezca.[76] La intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[77] Al momento de analizar la intención de los contratantes, los tribunales deben atender, no solo los actos anteriores, coetáneos y posteriores al contrato, sino también las circunstancias indicativas de la voluntad de las partes.[78] En consideración a lo anterior, al examinar la intención contractual, resulta importante considerar quiénes son las partes, sus experiencias particulares y conocimientos especializados sobre la materia sobre la cual versa el contrato.[79] La interpretación final debe ser cónsona con el principio de la buena fe y no llevar a resultados incorrectos, absurdos e injustos para las partes.[80]

Es menester apuntalar que, si se quebrantan las obligaciones pactadas mediante un contrato, la parte afectada podrá incoar una acción por incumplimiento contractual.[81] Mediante esta acción *ex contractu,* se podrá solicitar el resarcimiento de los daños que emanen del quebrantamiento de los deberes convenidos.[82] Empero, para que proceda esta acción, debe existir un pacto el cual haya generado tanto una obligación, así como una expectativa en virtud de la cual actuaron las partes.[83] Además, será necesario que la parte

---

[74] *Macial Burgos v. Tomé,* 144 DPR 522, 537 (1997).
[75] *Íd.*
[76] *Macial Burgos v. Tomé,* supra, a la pág. 537.
[77] *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 DPR 64, 69 (1983).
[78] Artículo 1234 del Código Civil de 1930, 31 LPRA sec. 3472 (derogado); *Blas v. Hosp. Guadalupe,* 167 DPR 439, 451 (2006).
[79] *Unysis v. Ramallo Brothers,* 128 DPR 842, 853 (1991).
[80] *Guadalupe Solis v. González Durieux,* 172 DPR 676, 684-685 (2007).
[81] *Cruz Cruz v. Casa Bella Corp.,* 213 DPR 980, 998 (2024).
[82] *Soc. de Gananciales v. Vélez & Asoc,* 145 DPR 508, 521 (1998).
[83] *Álvarez v. Rivera,* 165 DPR 1, 18 (2005).

afectada demuestre la existencia de un nexo causal entre el incumplimiento contractual y el daño reclamado.[84] Ahora bien, la acción por incumplimiento contractual debe presentarte antes de que expire el término prescriptivo de quince (15) años.[85] De lo contrario, la parte afectada por incumplimiento contractual estará impedida de solicitar el resarcimiento de los daños.

### III.

En el presente caso, la parte apelante mediante sus primeros cuatro (4) señalamientos de error esencialmente nos invita a concluir que el tribunal de instancia incidió al declarar con lugar la sentencia sumaria incoada por el apelado y al desestimar su demanda. Por estar los aludidos errores íntimamente relacionados, los discutiremos en conjunto. De otro lado, en su quinto señalamiento de error, la parte apelante muestra inconformidad con el foro primario por este haber enmendado la sentencia sumaria emitida en su contra. Este último error lo discutiremos por separado.

Establecido lo anterior, acentuamos que conforme relatamos previamente, este caso inició cuando la parte apelante presentó una demanda en contra del apelado en la cual indicó que habían pactado con este un contrato de arrendamiento con opción a compraventa sobre una propiedad sita en Dorado. Según se despende de los autos la parte apelante actualmente reside en dicha propiedad en concepto de arrendataria.

En el referido pliego, la parte apelante reconoció que adeudaba cierto balance del precio pactado para la compraventa negociada mediante contrato de opción a compra, empero, arguyó que el apelado había incumplido con cancelar los gravámenes sobre la propiedad y otorgar la escritura de compraventa. De manera que,

---

[84] *Cruz Cruz v. Casa Bella Corp.*, supra, a la pág. 999.
[85] *Ramos Lozada v. Orientalist Rattan Furniture Inc*, 130 DPR 712, 722 (1992).

este último, había infringido el contrato de opción a compraventa, por lo que procedía una acción en daños y perjuicios y que el tribunal ordenara al apelado a concederle la propiedad en cuestión.

En reacción, el apelado contestó la aludida demanda y, a su vez, presentó una reconvención. Mediante esta última, alegó que la parte apelante no había ejercido la opción de compraventa conforme al contrato pactado. Ello, principalmente, puesto a que acordaron que la parte apelante efectuaría pagos de cada tres (3) por la suma de $25,000.00 dólares, hasta satisfacer la suma pactada para la compraventa de la propiedad arrendada de $275,000.00 dólares. No obstante, lo anterior, la parte apelante únicamente había abonado aproximadamente $165,000 dólares. Además, puntualizó que el contrato fue ajustado en dos (2) ocasiones, para que la parte apelante cumpliera con lo pactado, cosa que no ocurrió.

Por otro lado, el apelado adujo en su reconvención que la parte apelante le adeudaba los cánones de arrendamiento de la aludida propiedad desde marzo de 2016 hasta el presente. A su vez, manifestó que, mediante el referido contrato de opción a compra, la parte apelante también se había obligado a pagar las contribuciones de la propiedad, lo cual igualmente había incumplido.

Tras varias instancias procesales, el apelado presentó una solicitud de sentencia sumaria en la cual alegó que no existía controversia en cuanto a las reclamaciones presentadas en su reconvención, por lo que debía dictarse sentencia sumaria a su favor. El referido pedimiento fue apoyado en una serie de documentos que acompañaron el escrito.

En respuesta, la parte apelante presentó un escrito en oposición, en el cual principalmente alegó que aún existían controversias sobre hechos esenciales, y que quien había incumplido el contrato de opción era el apelado. Ello, puesto a que no había eliminado los gravámenes sobre el inmueble en cuestión,

y, hasta que esto no se realizara, no se podía perfeccionar la compraventa.

Evaluados los escritos, el tribunal de instancia declaró *Ha Lugar* la solicitud de sentencia sumaria. En apretada síntesis, concluyó que se había probado, mediante el petitorio sumario incoado por el apelado, que parte apelante incumplió con el contrato de opción a compraventa y que esta se había aprovechado de las circunstancias para no pagar renta o CRIM desde hacía ocho (8) años. Así, pues, resolvió el contrato de opción habido entre las partes y ordenó el desahucio de la parte apelante de la propiedad objeto de este caso. Igualmente, ordenó a la parte apelante a satisfacer los cánones de arrendamiento no pagados y lo adeudado de CRIM. Además, dictaminó que el apelado debía devolverle a la parte apelante lo abonado para la compraventa de la propiedad.

Posteriormente, por solicitud del apelado, el tribunal *a quo* enmendó la referida sentencia, únicamente a los fines de atemperar la parte dispositiva a los hechos probados. Esta sentencia enmendada constituye el dictamen apelado.

Sabido es que, como paso previo a determinar si procedía declarar con lugar una solicitud de sentencia sumaria, esta Curia debe examinar *de novo* dicha solicitud, así como el pliego en oposición, y evaluar el cumplimiento de ambos escritos con la Regla 36 de Procedimiento Civil.[86] Luego de revisar los autos del presente caso, se desprende que el apelado cumplió a cabalidad con los requisitos exigidos por la Regla 36.2 de Procedimiento Civil,[87] al instar su solicitud de sentencia sumaria. Ahora bien, de un examen de la oposición de la parte apelante, surge que esta no cumplió apropiadamente con los requisitos establecidos en la Regla 36.3 (B)

---

[86] *Roldán Flores v. M. Cuebas, et al., supra,* 679; *Meléndez González et al. v. M. Cuebas,* supra, a las págs. 118-119.
[87] 32 LPRA Ap. V, R. 36.2.

de Procedimiento Civil.[88] Pese a que acompañó su escrito una multiplicidad de documentos, su escrito se limitó a presentar cierta inconformidad en cuanto a los hechos no controvertidos 1 al 6, enumerados por el apelado en su solicitud de sentencia sumaria, así como a esgrimir otras cuestiones sobre las cuales presuntamente no había controversia. Sin embargo, no fundamentó su inconformidad con los hechos presentados por el apaleado, ni con las cuestiones adicionales propuestas. Tampoco se expresó en cuanto a los hechos 7 al 19, enumerados por el apelado en su petitorio sumario. A tales efectos, la oposición presentada por la parte apelante de ninguna manera logró controvertir lo alegado y fundamentado por el apelado en su solicitud de sentencia sumaria.

Luego de realizar el antedicho examen, nos dispusimos a revisar minuciosamente las determinaciones de hechos esgrimidas por el tribunal *a quo* en el dictamen apelado. Del referido examen se desprende que todas las determinaciones de hechos están bien fundamentadas con los documentos anejados por apelante en su petitorio sumario. En consideración a lo anterior, este Panel está de acuerdo en que los primeros cuatro (4) errores esgrimidos por la parte apelante, en los cuales muestra su inconformidad con que el foro primario dictó sentencia sumaria en su contra, *no se cometieron.*

En este caso, distinto a lo que alegó la parte apelante, no existe controversia en cuanto a que la cancelación de los gravámenes no era una condición para el perfeccionamiento del contrato habido entre las partes. La cláusula 6ta del *Adendum* es clara en que los gravámenes se cancelarían al momento del cierre de la compraventa.[89] Por otra parte, tampoco existe controversia que quien incumplió el contrato de opción fue la parte apelante, quien

---

[88] 32 LPRA Ap. V, R. 36.3.
[89] Véase el Anejo 4 de la Entrada 95 del SUMAC, a la pág. 2.

tenía hasta diciembre de 2017 para abonar el dinero que faltaba para completar los $275,000 dólares que se habían acordado para la compraventa.[90] Sin embargo, a la fecha, la parte apelante quien admitió que únicamente le ha entregado al apelado unos $165,000 dólares, aún adeuda cierta cantidad.[91] Igualmente, tampoco existe controversia que, desde marzo 2016 al presente, la parte apelante no ha satisfecho el canon mensual de $1,4000.00 dólares por el arriendo de la propiedad en cuestión,[92] como tampoco satisfizo las contribuciones de la propiedad, las cuales se comprometió a pagar.[93]

Según expresamos en nuestra previa exposición doctrinal, cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos, no dando margen a ambigüedades u otras interpretaciones, así deben aplicarse.[94] De manera que, las partes sujetas al contrato deberán dar fiel cumplimento a lo pactado, puesto que, de lo contrario, la parte afectada tendrá a su disposición una acción por incumplimiento contractual.[95] Asimismo, reseñamos que cuando el Tribunal está ante un caso claro, en el cual tenga ante sí la verdad de todos los hechos pertinentes, tiene la facultad de disponer una controversia por vía sumaria.[96] Siendo así las cosas, este Panel concluye que el foro primario no incidió al declarar con lugar la sentencia sumaria presentada por el apelado y al desestimar la *Demanda* que inició la acción de título. Ello, puesto, que la parte aquí apelante no era acreedora de un remedio a su favor, ya que fue quien incumplió las cláusulas del contrato de opción objeto de este

---

[90] Véase el Anejo 4 de la Entrada 95 del SUMAC, a la pág.1.

[91] Véase el Anejo 2 de la Entrada 95 del SUMAC, a la pág. 3.

[92] Véase los Anejos 1 y 2 de la Entrada 95 del SUMAC, a la págs. 5 y 3, respectivamente.

[93] Véase los Anejos 1 y 2 de la Entrada 95 del SUMAC, a la págs. 7 y 4, respectivamente.

[94] *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.

[95] *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 998 (2024).

[96] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

caso, las cuales eran claras y no daban margen para otra interpretación.

Por otra parte, en cuanto a la inconformidad de la parte apelante con que el tribunal *a quo* enmendó el dictamen originalmente emitido, puntualizamos que, luego de un examen cuidadoso del expediente, no encontramos que el referido foro incidió con tal proceder. De los autos se desprende que la solicitud de enmienda presentada por el apelado fue oportuna y que sus planteamientos, en cuanto a las razones por las cuales se debía corregir la parte dispositiva de la sentencia, estaban bien fundamentados en los documentos con los cuales acompañó su solicitud sentencia sumaria.

En su recurso, la parte apelante alega que el error cometido por el foro primario radica en que el tribunal de instancia, mediante *Orden*, notificada el 9 de mayo de 2025, dispuso que enmendó la sentencia, pero que no fue hasta el día 21, del mismo mes y año, y luego de que el apelado presentó una moción aclaratoria, que el referido foro emitió propiamente el dictamen apelado.

En consideración a lo expuesto por la parte apelante, precisa recordar que, en el manejo de los casos ante su consideración, el tribunal de instancia tiene amplia discreción. Por ende, los Tribunales Apelativos no debemos pretender conducir ni manejar el trámite ordinario de los casos que atiende la primera instancia judicial. Ello, puesto a que el foro primario es el que mejor conoce las particularidades del caso.[97] A tales efectos, no encontramos razón para intervenir con el trámite procesal relacionado a la sentencia enmendada, como tampoco entendemos que el tribunal de instancia incidió en su actuar.

---

[97] *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012).

Por todo lo antes expuesto nos es forzoso *confirmar* el dictamen apelado.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* enmendada apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones